<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GISELLE MCKENZIE,<br><br>    Plaintiff,<br><br>v.<br><br>PRESSLER, FELT & WARSHAW, LLP,<br><br>    Defendant.<br><br>PRESSLER, FELT & WARSHAW, LLP<br><br>    Third Party Plaintiff,<br><br>v.<br><br>OFFICE OF THE MERCER COUNTY SHERIFF,<br><br>    Third Party Defendant. | Civil Action No. 23-23379 (SDW) (JRA)<br><br><br><br><br><br>**OPINION**<br><br><br>February 25, 2025 |

**WIGENTON**, District Judge.

  Before this Court is Third Party Defendant Office of the Mercer County Sheriff's (OMCS) motion to dismiss (D.E. 15) Defendant Pressler, Felt & Warshaw, LLP's (PFW) third party complaint (D.E. 7 at 10–19 ("TPC")). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367(a). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the motion to dismiss is **GRANTED**.

  **I.**  **BACKGROUND AND PROCEDURAL HISTORY**

  Plaintiff Giselle McKenzie filed the original complaint in this matter against PFW for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). (D.E.

1

1 ¶ 1.)  She alleges that she owed a debt to The Art of Dentistry, LLC, which transferred that debt to PFW.  (*Id.* at ¶¶ 17, 21.)  PFW sued Plaintiff in New Jersey Superior Court (Somerset County), and Plaintiff defaulted.  (*Id.* at ¶¶ 22–23.)  On November 28, 2022, PFW was granted a judgment against Plaintiff for $2,028.87.  (*Id.* at ¶ 23.)  The Superior Court granted PFW an order for wage execution on January 27, 2023.  (*Id.* at ¶¶ 24–25.)  PFW applied for a second wage execution on February 6, 2023.  (*Id.* at ¶ 26.)

On February 22, 2023, Plaintiff alleges that she voluntarily made a $2,114.82 credit card payment to PFW.  (*Id.* at ¶ 28.)  Plaintiff believed that payment satisfied the judgment against her in full.  (*Id.*)  Despite the payment, the Superior Court granted PFW's second application for wage execution on February 27, 2023.  (*Id.* at ¶¶ 29–30.)  Pursuant to those wage execution orders, $2,475 was garnished from Plaintiff's wages from April through September 2023.  (*Id.* at ¶ 35.)  An unspecified amount of the garnished funds were returned to Plaintiff.  (*Id.* at ¶ 36.)

On December 27, 2023, Plaintiff sued PFW in this Court, asserting that PFW violated several provisions of the FDCPA by engaging in harassing, deceptive, and unfair debt collection practices.  (*Id.* at ¶¶ 50–52.)  On April 12, 2024, PFW answered the complaint and filed a third party complaint against OMCS.  (D.E. 7.)  PFW alleges that Plaintiff made two payments to the judgment against her—one on February 28, 2023 for $0.23, and one on March 7, 2023 for $2,114.59.  (TPC ¶¶ 13–14.)  According to the third party complaint, "a small balance remained due and owing on the judgment" after those payments.  (*Id.* at ¶ 15.)  PFW alleges that it sent OMCS a letter on March 22, 2023, which 1) enclosed the wage execution and requested service on Plaintiff's employer and 2) stated that Plaintiff had already made some payments since the writ was filed and that the remaining balance was $104.31.  (*Id.* at ¶¶ 16–17.)  OMCS allegedly served

2

the writ of wage execution on Plaintiff's employer but failed to update its records regarding the payments already made. (*Id.* at ¶¶ 21–22.)

Once PFW began to receive funds pursuant to the wage execution order, it alleges corresponding with OMCS regarding satisfaction of the judgment three times. (*Id.* at ¶¶ 23–27.) On or about June 13, 2023, PFW sent a check for $151.27 to OMCS. (*Id.* at ¶ 24.) With the check, PFW included a "correspondence" describing the funds as "an overpayment" and directing OMCS to "[r]eturn the overpayment to the employer, along with any excess dollarage you may have collected, so it may be applied to a subsequent writ, if any." (*Id.*) The correspondence also directed OMCS to "return the execution to the court fully satisfied." (*Id.*) On or about June 16, 2023, PFW sent a check for $252.51, the full amount it had received from OMCS on or about the day before, to OMCS. (*Id.* at ¶¶ 25–26.) The check was accompanied by the same instructions as the prior check. (*Id.* at ¶ 26.) Finally, on June 21, 2023, PFW sent OMCS a "correspondence advising to return the wage execution to the Court satisfied." (*Id.* at ¶ 27.)

PFW's third party complaint contained four counts: common law or implied indemnification, contribution, negligence, and amercement. (*Id.* at ¶¶ 30–59.) On August 2, 2024, OMCS filed a motion to dismiss the third party complaint. (D.E. 15.) PFW timely opposed (D.E. 21), and OMCS timely replied (D.E. 26). During briefing, the parties stipulated to dismiss the first two counts. (D.E. 25.) The negligence and amercement counts remain.

## II. LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a complaint's allegations are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichik*, 605 F.3d 223, 229 (3d Cir. 2010). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[L]abels and conclusions, … formulaic recitation[s] of the elements of a cause of action," and "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 (third alteration in original) (quoting *Twombly*, 550 U.S. at 557).

### III. DISCUSSION

#### A. PFW's Claims

##### i. Negligence

PFW's first claim against OMCS is for negligence. PFW alleges that OMCS owed it a duty "to follow its reasonable instructions with respect to executions issued." (TPC ¶ 45.) PFW alleges that OMCS breached that duty on several occasions: by failing to credit the writ of wage execution after receiving PFW's March 22, 2023 letter (*id.* at ¶ 46), and by failing to return the writ satisfied to the court after being instructed to by PFW's June 13, June 16, and June 21, 2023 correspondences (*id.* at ¶¶ 47–49). PFW states that but for OMCS's conduct, PFW would not have

been sued by Plaintiff. (*Id.* at ¶ 50.) PFW seeks damages amounting to whatever expenses it incurs by being sued by Plaintiff, including judgments, interest, attorney's fees, court costs, and the costs of any appellate proceedings. (*Id.* at ¶¶ 51, 53.)

### ii. Amercement

PFW's second claim, for amercement, arises from N.J.S.A. § 40A:9-109, which provides:

> If a sheriff or acting sheriff fails to perform any duty imposed upon him by law in respect to writs of execution resulting in loss or damage to the judgment creditor, he shall be subject to amercement in the amount of such loss and damage to and for the use of the judgment creditor.

PFW alleges that OMCS "failed to perform its duty in complying with the reasonable instruction of the judgment-creditor's attorney," which "may result in loss or damage to the judgment-creditor's attorney through the filing of the instant action by [Plaintiff]." (TPC ¶¶ 56–57; *see also* D.E. 21 at 7 ("The alleged failure to comply with an instruction to credit the writ constitutes an alleged failure to perform a basic ministerial duty imposed upon the OMCS that may result in the loss or damage to PFW.").) PFW "acknowledges that it is not a judgment-creditor" but argues that as the judgment-creditor's attorney, it is in privity with the judgment-creditor. (D.E. 21 at 7.)

OMCS argues that the amercement statute is inapplicable because it does not require a sheriff to indemnify a judgment creditor. (D.E. 26 at 6.) It seems to argue that its failure to credit the writ was reasonable; there was no "willful refusal or neglect to execute the subject Wage Order." (*Id.*) It also distinguishes its conduct from conduct that usually leads to amercement liability, including failure to "inventory goods, … complete execution of a writ, [or] sell property levied upon." (*Id.*) Instead, OMCS asserts, the instant matter is typical of "cases denying an amercement application," including those in which "'plaintiffs have brought on the consequences complained of by their own instructions to the sheriff.'" (*Id.* (quoting *Vitale v. Hotel Cal., Inc.*,

5

446 A.2d 880, 889 (N.J. Super. Ct. Law Div. 1982) (*aff'd*, 455 A.2d 508 (N.J. Super. Ct. App. Div. 1982))).) Because OMCS "enforced the Wage Order that was provided," it did not "refus[e] to perform any responsibilities," and it cannot be found that it "did not comply with the judicially-entered Wage Order." (*Id.* at 7.)

### B. OMCS's Defenses

In addition to its argument that the amercement statute does not apply, OMCS makes two arguments in support of dismissal. First, it asserts that, as a governmental office, qualified immunity protects it from civil liability. (D.E. 15-1 at 3–7.) Second, it asserts that PFW has failed to adequately plead a claim as required by Rule 12(b)(6). (*Id.* at 7–8.)

With respect to qualified immunity, the parties rely on battling provisions of the New Jersey Tort Claims Act ("the Act"). According to OMCS, the applicable section is N.J.S.A. § 59:3-3, which immunizes public officials from civil liability for their acts "in good faith in the execution or enforcement of any law." OMCS states that when it collected funds pursuant to the wage execution order, it was "carry[ing] out its statutory duties" and is therefore protected under § 59:3-3. (D.E. 26 at 2.) It cites three different legal provisions that it was executing or enforcing: N.J.S.A. §§ 2A:17-1,[1] 2A:17-15,[2] and 2A:17-51.[3] (*Id.*)

PFW argues that "[t]his case does not deal with the execution or enforcement of any law," so § 59:3-3's qualified immunity does not apply. (D.E. 21 at 4.) Instead, PFW points to § 59:2-

---

[1] § 2A:17-1 concerns the execution of "writ[s] … issued against real estate."
[2] § 2A:17-15 provides that "[m]oney belonging to a defendant in execution may be levied on and returned by virtue of an execution as so much money collected, without exposing the same to sale."
[3] § 2A:17-51 provides

> On presentation of the execution mentioned in section 2A:17-50 of this title by the officer to whom delivered, for collection to the person or persons from whom such wages … are due and owing, or thereafter become due and owing to the judgment debtor, such execution shall become a lien and a continuing levy upon the wages … due or to become due to such judgment debtor to the amount specified therein.

3(d), which provides that "[n]othing in this section shall exonerate a public entity for negligence arising out of acts or omissions of its employees in carrying out their ministerial functions." PFW argues that OMCS's collection of Plaintiff's wages was not the execution of a law, but rather a ministerial duty because it "was a common, set task of routine mathematical calculation; there was no discretion as to the application of the credit." (D.E. 21 at 5.) Accordingly, per PFW, OMCS is not immunized and instead subject to a typical negligence standard.

"[T]he Act was clearly intended to reestablish a system in which immunity is the rule, and liability the exception." *Bombace v. City of Newark*, 593 A.2d 335, 341 (N.J. 1991). Public officials have been found to be executing or enforcing laws, allowing for the possibility of immunity under the Act, when making arrests, apprehending suspects, and conducting prosecutions. *See, e.g.*, *Saint-Jean v. Cnty. of Bergen*, 509 F. Supp. 3d 87, 115–16 (D.N.J. 2020) (false imprisonment and malicious prosecution); *Remillard v. City of Egg Harbor City*, 424 F. Supp. 2d 766, 771 n.8 (D.N.J. 2006) (excessive force in violation of Fourth Amendment). A New Jersey court has found that officials were not executing or enforcing a law and that immunity was inapplicable, however, when they responded to a medical emergency and transported a plaintiff to the hospital. *Frields v. St. Joseph's Hosp. & Med. Ctr.*, 702 A.2d 353, 249 n.1 (N.J. Super. Ct. App. Div. 1997) (excessive force and negligent and intentional infliction of emotional distress).

It appears that OMCS was acting pursuant to a statute when it executed Plaintiff's wages. One of the provisions provided by OMCS, § 2A:17-51, specifically provides that "[o]n presentation of the execution" by the officer to the debtor, "such execution shall become a … continuing levy upon the wages … due or to become due to such judgment debtor to the amount specified therein." OMCS levied Plaintiff's wages consistent with the writs it received and § 2A:17-51. Collecting wages pursuant to a judgment is also more in line with a sheriff's typical

7

enforcement duties which, as explained above, have been found subject to the Act's qualified immunity provision. The collection does not appear to have been a completely ministerial task—at the very least, OMCS had to determine whether PFW's "correspondence[s]" (TPC at ¶¶ 24, 26, 27) indicating overpayment were sufficient to modify official writs of wage execution certified by the Superior Court.[4] Finally, as noted by OMCS (D.E. 26 at 3), the amercement statute, under which PFW also seeks relief, refers to "dut[ies] imposed upon [a sheriff] *by law* in respect to writs of execution." N.J.S.A. § 40A:9-109 (emphasis added). For all of these reasons, § 59:3-3 is the applicable provision.

Immunity under § 59:3-3 is not absolute, however. The next question is whether it protects OMCS in this matter specifically. "A defendant's entitlement to qualified immunity [under § 59:3-3] based on objectively reasonable conduct 'is a question of law to be decided [as] early in the proceedings as possible, preferably on a properly supported motion for summary judgment or dismissal.'" *N.E. for J.V. v. State Dep't of Child. & Fams., Div. of Youth & Fam. Servs.*, 158 A.3d 44, 59 (N.J. Super. Ct. App. Div. 2017) (alteration in original) (quoting *Wildoner v. Borough of Ramsey*, 744 A.2d 1146, 1152–53 (N.J. 2000)). The Act "immunizes employees who have acted (a) with objective reasonableness, or (b) with subjective good faith." *Gonzalez v. N.J. Dep't of Child. & Fams.*, 545 F. Supp. 3d 178, 218 (D.N.J. 2021), *aff'd in part, appeal dismissed in part sub nom. Gonzalez v. New Jersey*, No. 21-2395, 2023 WL 3884114 (3d Cir. June 8, 2023); *N.E. for J.V.*, 158 A.3d at 60. "A court must examine whether the actor's allegedly wrongful conduct was objectively reasonable in light of the facts known to him or her at the time." *N.E. for J.V.*, 158 A.3d at 59.

---

[4] This may have been a closer call had PFW properly modified the wage orders pursuant to N.J.S.A. § 2A:17-55. PFW's argument—that OMCS's task was so clear that there was only one way to execute it—cannot succeed when PFW provided OMCS with official documents and separate instructions modifying those documents.

8

Accepting all of the allegations as true, it is clear that OMCS acted reasonably and in good faith here. There are no allegations of bad faith, and OMCS simply executed Plaintiff's wages consistent with the writs it had received. Particularly because the law provides a mechanism for amending such writs, of which PFW did not avail itself, OMCS's conduct was objectively reasonable. *See* N.J.S.A. § 2A:17-55. Failure to credit the writ pursuant to PFW's correspondences is, if anything, the type of negligence allegation that § 59:3-3 immunizes OMCS against. Accordingly, OMCS is immune from civil liability for its execution of Plaintiff's wages. Even accepting all of PFW's allegations as true, it does not appear possible that PFW could overcome qualified immunity and be entitled to relief, so both remaining charges in the third party complaint must be dismissed.[5] Because qualified immunity is dispositive of the entire remaining third party complaint, the arguments regarding the pleadings standard need not be addressed.

### IV. CONCLUSION

For the reasons set forth above, the motion to dismiss is **GRANTED**, and the third party complaint is **DISMISSED**. An appropriate order follows.

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:  Parties
     José R. Almonte, U.S.M.J.

---

[5] Qualified immunity under the Act does not appear previously to have been asserted as a defense against amercement. Nothing indicates that qualified immunity cannot protect public officials who acted reasonably from amercement claims, however, as it does here. Nonetheless, even absent qualified immunity, it is unlikely that PFW's amercement claim would succeed. "In such a condition of honest mistake [between the sheriff and the judgment creditor], the decision ought to be favorable to the sheriff." *Stevens v. Deats*, 41 N.J.L. 340, 342 (N.J. 1879).